**LONE STAR R.V. SALES, INC., Appellant,**

v.

**MOTOR VEHICLE BOARD OF THE TEXAS DEPARTMENT OF TRANSPORTATION & Winnebago Industries, Inc., Appellees.**

No. 03–00–00764–CV.

Court of Appeals of Texas, Austin.

May 31, 2001.

David R. Sapp, Sapp, Sapp & White, P.C., Austin, for Appellant.

Nancy E. Olinger, Assistant Attorney General, Austin, for Appellee, Motor Vehicle Bd. of the TxDOT.

J. Woodfin Jones, Austin, Christopher J. Lowman, Scott, Douglass & McConnico, L.L.P., Houston, for Appellee, Winnebago Industries, Inc.

Before Chief Justice ABOUSSIE,
Justices YEAKEL and PATTERSON.

PATTERSON, Justice.

Lone Star R.V. Sales, Inc. ("Lone Star") appeals[1] from a district court judgment affirming an order of the Texas Motor Vehicle Board ("Board") that found good cause existed to terminate the dealer franchise agreement[2] between Lone Star and Winnebago Industries, Inc. ("Winnebago").[3] The order rejected a proposal for decision issued by an administrative law judge following a contested case hearing involving Lone Star and Winnebago and adopted new findings of fact and conclusions of law. In five issues, Lone Star challenges (i) the Board's consideration of untimely exceptions to the proposal for decision filed by Winnebago, (ii) the Board's decision to allow termination of Lone Star's franchise based on "threats of violence" supported by evidence not in the record, and (iii) the action of the Board in reversing the proposal for decision prepared by the administrative law judge. We affirm the district court judgment.

## BACKGROUND

Lone Star owns and operates a motor home dealership in Houston, Texas. Winnebago is a manufacturer of recreational vehicles, and Lone Star is a franchised Winnebago dealer. The dealership is owned by Bruce Byrne who, along with his sons, Scott and Gordon Byrne, opened Lone Star in 1985. In 1994, the Winneba-

go dealer in Harris County closed its dealership. Winnebago negotiated with Lone Star to become the replacement dealer. The parties signed the first franchise agreement in November 1994 and have renewed their agreement each year.

Due to ongoing disputes on various subjects, from 1996 through 1998 the business relationship between Winnebago and Lone Star soured. On August 28, 1998, Winnebago notified Lone Star of its intent to terminate the dealer franchise agreement, citing the following reasons: (1) failure to honor warranty obligations, (2) poor sales history, (3) disparagement of Winnebago's products, (4) lack of commitment to Winnebago's products, and (5) a history of verbal abuse and threats made by Lone Star personnel against Winnebago employees.

In response to Winnebago's notice of termination, Lone Star filed a Notice of Protest of Franchise Termination with the Board, invoking its statutory right to protest the termination. *See* Tex.Rev.Civ. Stat. Ann. art. 4413(36), § 5.02(b)(3) (West Supp.2001).[4] The contested case was tried before an administrative law judge on February 16 and 17, 1999. On September 13, the administrative law judge issued a proposal for decision, finding that good cause had not been shown for the termination of Lone Star's franchise agreement and recommending that the protest be granted.

The proposal for decision was scheduled to be considered by the Board at its meeting on November 4, 1999. Because Win-

---

1. *See* Tex. Gov't Code Ann. § 2001.171 (West 2000).

2. *See* Tex.Rev.Civ. Stat. Ann. art. 4413(36), § 7.01(a) (West Supp.2001). We refer to the Motor Vehicle Commission Code as "the Act." *Id.* §§ 1.02–7.01.

3. Where appropriate, we will refer jointly to the Board and Winnebago as appellees.

4. Section 5.02(b)(3) of the Act requires that, if a dealer files a timely protest with the Board, a termination of the agreement is not effective until the Board makes a determination that the party seeking termination has demonstrated by a preponderance of the evidence that there is good cause for the termination. Tex. Rev.Civ. Stat. Ann. art. 4413(36), § 5.02(b)(3) (West Supp.2001).

nebago's exceptions to the proposal were not timely filed with the Board, Lone Star did not respond to the exceptions prior to the meeting. Winnebago filed a motion asking the Board to consider its late-filed exceptions or, in the alternative, for a continuance of the hearing. At the meeting, after deciding to proceed with the hearing, the Board entertained argument of counsel on whether the proposal for decision should be adopted. After a lengthy hearing, the Board decided to table the matter until its February meeting, directing its staff to prepare an alternative set of findings and conclusions "that would support termination of the franchise."

At the Board's February meeting, the administrative law judge presented three proposed orders finding good cause for termination, one of which was adopted by the Board. Lone Star then filed this lawsuit, seeking judicial review of the Board's order. Tex. Gov't Code Ann. § 2001.171 (West 2000). A Travis County district court affirmed the Board's order. Lone Star appeals the district court judgment.

## DISCUSSION

### I. Termination of Franchise Agreement

Manufacturers are prohibited from terminating a dealer's franchise unless certain conditions are met. Tex.Rev.Civ. Stat. Ann. art. 4413(36), § 5.02(b)(3)(A). A manufacturer seeking to terminate a franchise must provide the dealer with written notice not less than sixty days before the effective date of termination setting forth the specific grounds for termination and informing the dealer that he may be entitled to file a protest with the Board. *Id.* § 5.02(b)(3)(A)(i)-(iii). If the dealer files a timely protest, the Board must hold a contested case hearing to determine whether the manufacturer has established by a preponderance of the evidence that there is good cause for the proposed termination. *Id.* § 5.02(b)(3)(A)(iv). In determining whether good cause has been established, the Board must consider "all the existing circumstances," including:

(A) the dealer's sales in relation to sales in the market;

(B) the dealer's investment and obligations;

(C) any injury or benefit to the public;

(D) the adequacy of the dealer's service facilities, equipment, parts and personnel;

(E) whether warranties are being honored by the dealer;

(F) the parties' compliance with the franchise agreement; and

(G) the enforceability of the franchise agreement from a public policy standpoint.

*Id.* § 5.02(b)(5). The Act is enforced by the Board "to provide for compliance with manufacturer's warranties, and to prevent frauds, unfair practices, discriminations, impositions, and other abuses of our citizens." *Id.* § 1.02.

Winnebago sought termination of Lone Star's franchise, alleging that Lone Star's history of verbal abuse and threats, its disparagement of and lack of commitment to Winnebago products, and its failure to achieve sales objectives and to honor warranty obligations had harmed consumers in the Houston area. Finding both parties to blame for the deteriorating relationship, the administrative law judge concluded that Winnebago failed to establish by a preponderance of credible evidence that good cause existed for the termination of the agreement. She recommended that the Board grant Lone Star's protest and enter a cease and desist order against Winnebago, prohibiting it from terminating the franchise agreement.

In rejecting the proposal for decision, the Board considered "all the existing circumstances," and concluded that Winnebago had established by a preponderance of the credible evidence that good cause existed for the termination of the agreement. *Id.* § 5.02(b)(5). The Board then determined that the protest would be dismissed and that no further action would be taken to prevent the termination of the franchise agreement.

## II. Lone Star's Challenges to the Board's Decision

A dealer whose franchise has been terminated by a final order of the Board is entitled to judicial review of the order in a Travis County district court. *Id.* § 7.01(a). The district court reviews final actions of the Board under the substantial evidence rule. *Id.* Under the substantial evidence rule, a reviewing court may not substitute its judgment for the judgment of the agency on the weight of the evidence on questions committed to agency discretion. Tex. Gov't Code Ann. § 2001.174 (West 2000). A reviewing court must reverse or remand the case for further proceedings if the complaining party's substantial rights have been prejudiced because the agency's findings, inferences, conclusions, or decisions are:

(A) in violation of a constitutional or statutory provision;

(B) in excess of the agency's statutory authority;

(C) made through unlawful procedure;

(D) affected by other error of law;

(E) not reasonably supported by substantial evidence considering the reliable and probative evidence in the record as a whole; or

(F) arbitrary or capricious or characterized by an abuse of discretion or a clearly unwarranted exercise of discretion.

*Id.* § 2001.174(2)(A)-(F).

## A. Board's Decision to Consider Winnebago's Untimely Exceptions

In its first three issues, Lone Star complains that, by considering Winnebago's untimely exceptions, the Board engaged in an unlawful procedure, prejudicing Lone Star's substantial rights. *See id.* § 2001.174(2)(C). Lone Star urges that the Board's action was unlawful and constituted an abuse of discretion. *See id.* § 2001.174(2)(C), (D), (F). Because the record reflects that the Board acted lawfully and within its discretionary authority, we reject Lone Star's challenge.

The facts concerning Winnebago's exceptions are undisputed. The administrative law judge served a copy of the proposal for decision on the parties on September 13, 1999, and notified them that the proposal was set for consideration by the Board at its scheduled meeting on November 4. On October 7, the due date for exceptions to be served,[5] Winnebago mailed its exceptions to the Motor Vehicle Division ("Division") and to Lone Star's counsel. Although Lone Star received a copy of the exceptions on October 12, the Division did not receive these exceptions until October 27 due to an apparent postal error.[6]

---

5. Under the Board's rules of practice and procedure, the parties were required to file exceptions within twenty days of service of the proposal for decision. *See* 16 Tex. Admin. Code § 101.60 (2001).

6. Under the "mailbox rule," the exceptions were required to be received by the Board by October 12. *See id.* § 101.13(c) ("[D]elivery by mail shall be complete only if such deposit is made on or before said date and the document is received in hand by the Board at its office in Austin not later than the fifth Board business day after the date of such deposit.").

Meanwhile, on October 19, an agency employee telephoned Winnebago's counsel regarding another filing. For the first time, counsel for Winnebago learned that the Division had not received its mailed exceptions. In response to the call, counsel forwarded a second set of exceptions to the Division. The Division received the exceptions on October 20. The following day, Brett Bray, the Division Director, acknowledged the untimely receipt of Winnebago's exceptions. By facsimile, he advised: "We will mail your submission and Protestant's response to the Board members. However, we are informing the Board your submission is untimely and should not be considered." By a letter hand-delivered to Director Bray on the same day, Lone Star's counsel complained that he did not have an adequate opportunity to respond and urged that the untimely exceptions not be considered by the Board.[7]

In an October 21 memorandum to the Board enclosing the untimely exceptions, Director Bray wrote: "In keeping with our policy of ensuring that you receive all materials submitted, we are forwarding Winnebago's Exceptions to the Proposal for Decision and the response thereto from Protestant. However, you are not required to read or consider this material in making your decision on November 4."

On October 22, Winnebago filed a motion asking that the Board consider the exceptions or, in the alternative, grant a continuance of the hearing scheduled for November 4. The motion for continuance contained an offer to pay Lone Star's reasonable costs resulting from a continuance.

Lone Star did not respond to the motion. On October 29, with notice to the parties, Bray forwarded Winnebago's motion to the Board, recommending two options: that the Board consider the matter on its merits at the upcoming hearing or grant the motion for continuance until the February Board meeting.

At the outset of the November hearing, Board Chairman Bob Barnes carefully delineated the two options available to the Board:

[O]ne option on this case is to continue it, move it forward to the next meeting. Another one is to go ahead and hear it on this one. It's kind of my feeling that we ought to go ahead and hear the case this time, and I wanted to see what the feeling on the Board was on that. Anybody have an objection to that or any comment?

In the absence of a response, Chairman Barnes proceeded to a hearing on the merits by calling on counsel for Winnebago and for Lone Star. Neither counsel requested a continuance or objected to proceeding on the merits. Both counsel presented oral argument, summarizing arguments delivered in writing in their respective exceptions to the proposal for decision.

At the conclusion of the arguments and a lengthy discussion among the Board members, the Board voted to table the matter until the February 2000 Board meeting. But they instructed the staff to develop an alternative set of findings and conclusions supporting termination of the franchise.

---

7. Lone Star was entitled to ten days from the date of filing of the exceptions to file a reply. *See id.* § 101.62. A Board rule also prohibits the filing of any material within fifteen days of a Board meeting at which a case will be considered *and decided. Id.* § 101.63. Because October 20—the day Winnebago's exceptions were filed—was the fifteenth day before the Board meeting, and Lone Star claims that it did not learn of the filing until the next day when it received Bray's facsimile, Lone Star contends that it was foreclosed from filing a reply.

During the interim period between the November and February Board meetings, Lone Star did not file a reply to Winnebago's exceptions. At the February Board meeting, in addition to the original proposal for decision favorable to Lone Star, the administrative law judge had prepared three alternative proposals supporting termination. With the four proposals before them, the Board again heard argument of counsel. Before turning to the merits of his protest, counsel for Lone Star argued that Winnebago's exceptions were untimely filed, "yet at the last meeting, without discussion, they were considered, and that came out to the detriment of the protestant." Counsel did not request leave to file a response nor did he explain why he had not filed a response between the two hearings.

■ Lone Star urges on appeal that the Board improperly considered Winnebago's exceptions to the detriment of Lone Star's substantial rights. Because Director Bray's letter advised the parties that Winnebago's exceptions "should not be considered" and his memorandum advised the Board that they were "not required to read or consider" them, Lone Star complains that Bray misstated the law and that the Board violated the law when it considered the exceptions. By allowing Winnebago to file its exceptions thirteen days after they were due, Lone Star contends that it was denied the right to file a reply to the exceptions because Lone Star could not file a reply by the fifteenth day before the Board meeting as required by the Board's rules. *See* 16 Tex. Admin. Code § 101.63 (2001). Arguing that they were "ramrodded," Lone Star complains that the rules were manipulated to deprive it of a fair, just, and impartial adjudication of its rights. *See id.* § 101.01.

The Board rules of practice and procedure provide for the filing of exceptions within 20 days after the date of service of the hearing officer's report. *Id.* § 101.60. Section 101.60 also addresses extensions of time:

> Requests for extension of time within which to file exceptions shall be filed with the hearing officer and a copy of such request shall be served on all other parties in interest. The hearing officer shall promptly notify the parties of his or her action upon the request and shall allow *additional time only in extraordinary circumstances where the interest of justice so requires.*

*Id.* (emphasis added). Winnebago's motion asking the Board to consider its exceptions or to grant a continuance satisfied the requirements of section 101.60. *See id.* The motion set forth the circumstances of the service of the exceptions and was accompanied by an affidavit of counsel. The Board properly allowed Winnebago's exceptions to be considered because Winnebago's motion demonstrated, as provided by this rule, "extraordinary circumstances where the interest of justice so requires" such relief. *Id.* Moreover, by facsimile to the parties on October 29, Director Bray advised the parties of his notice to the Board of its two options: that the Board proceed to the merits on November 4 or grant a continuance until February.

The rules further address the filing of documents for consideration by Board members:

> Any document filed by a party to a contested case for consideration by the members of the Board in their decision of the case must be filed with the Board at least 15 days prior to the date of the Board meeting at which the case is scheduled for consideration *and decision.* Any document not filed within such time will not be considered by the members of the Board at that meet-

ing.... *For good cause shown, the Board may waive or shorten the requirement for the filing of all documents prior to any Board meeting.*

*Id.* § 101.63 (emphasis added). The Board may consider only the materials timely submitted. Tex.Rev.Civ. Stat. Ann. art. 4413(36), § 3.08(g) (West Supp.2001).

It undisputed that Lone Star's counsel received a timely copy of the exceptions on October 12, 1999, well in advance of the hearing. On October 20, when counsel for Winnebago learned that the Division had not received the exceptions, he filed a duplicate set. The mailed exceptions arrived at the Division on October 27. The record supports Winnebago's position that the late filing was due to a postal error.

■ Lone Star did not file a response to Winnebago's exceptions, request additional time to respond to the exceptions, or file a motion for continuance of the November hearing. Lone Star never sought to file a reply on shortened time. When Winnebago filed a motion asking the Board to consider the exceptions or to grant a continuance, Lone Star did not respond. At the November hearing, Lone Star did not object to proceeding on the merits or otherwise request a continuance. Apart from Lone Star's October 21 letter urging the Board not to consider Winnebago's exceptions, Lone Star made no effort to object to the Board's decision to go forward on November 4. At no time did Lone Star's counsel suggest that his client desired a continuance, that his client was prejudiced by the Board proceeding to the merits, or that it was error for the Board to consider the merits under such circumstances. By not responding to the motion and by acquiescing, without objection, to the Board's decision to proceed to a hearing on the merits, Lone Star waived its complaint.

When the protest was tabled for further consideration until the February meeting, Lone Star again failed to respond to the exceptions. At the February hearing, Lone Star's counsel commented that the exceptions were untimely filed, but he lodged no objection to proceeding with the hearing and made no further request to submit a reply. Because rule 101.63 requires any document to be filed with the Board within fifteen days of the Board's consideration of the matter *and decision,* Lone Star had ample time before the February hearing to file its reply. *See* 16 Tex. Admin. Code § 101.63. At oral argument on appeal, Lone Star's counsel contended that Lone Star did not file a reply between the November 1999 and February 2000 hearings because the Board essentially made its final determination in November and any reply after the November hearing was futile. The record persuades us otherwise.

At the February hearing, the administrative law judge presented three new proposals supporting termination of the franchise. Chairman Barnes reminded the Board that it could allow additional argument. The Board agreed to allow further argument by the parties' counsel. After argument by Lone Star's counsel urging the Board not to adopt any of the three new proposals, counsel introduced the company's owner, Bruce Byrne, to explain why he wanted the Winnebago franchise. Byrne described how the termination would affect his employees and business.

At the conclusion of the Board's discussion of its various options, a Board member made a motion to adopt the administrative law judge's *original* proposal for decision. When the motion failed for lack of a second, another member moved that one of the revisions be adopted. In a close

vote, the motion carried.[8] Contrary to Lone Star's suggestion that the rules were indiscriminately ignored and "sharp practice" was countenanced by the Board, the Board allowed full and ample argument and comment by all who sought to be heard. That Lone Star never sought leave to file its reply, made no attempt to reply, and never objected to the Board proceeding to the merits were strategic decisions made by Lone Star.

Although Lone Star argues on appeal that "there was no justification for denying a continuance to allow Lone Star to have time to file its replies to Winnebago's untimely exceptions," Lone Star, in fact, never sought a continuance, and the Board did not deny a request by Lone Star for a continuance. Instead, Lone Star acquiesced in the Board's proceeding to consider the merits at both hearings. We conclude that the Board did not engage in an unlawful procedure by accepting and considering the exceptions; rather, we hold that the Board properly exercised its discretion "in the interest of justice."

■ Even if we were to find, however, that the Board engaged in an unlawful procedure, the task at hand is to determine whether Lone Star's substantial rights were prejudiced by the Board's consideration of the exceptions. *See* Tex. Gov't Code Ann. § 2001.174(2). Lone Star does not point to a single argument that it was not permitted to fully make either in its own exceptions or in argument to the Board. Finding that the purpose of the rules—to ensure a fair, just, and effective adjudication of the parties' rights—was

served, and that no prejudice to Lone Star's substantial rights occurred, we overrule its first three issues.

## B. Board's Finding of "Threats of Violence"

■ By its fourth issue, Lone Star contends that the Board's reliance on a finding of "threats of violence" to support its decision to terminate the franchise is not supported by evidence in the record. Lone Star does not contend that the Board's order is not supported by substantial evidence; rather, it urges that in focusing unduly on an isolated incident, the Board disregarded the statutory criteria for termination and relied on evidence outside the record. Appellees contend that Lone Star waived its complaint[9] and that the evidence was sufficient to support the Board's order.

The record reflects that, as the relationship between the parties deteriorated, harsh words were exchanged. As one of its grounds to support the termination, Winnebago asserted that Lone Star's conduct was injurious to consumers. Specifically, Winnebago argued that Lone Star did not maintain a current inventory, its actual sales did not meet projections and goals agreed to between the parties,[10] and Lone Star disparaged Winnebago products to consumers and otherwise failed to actively promote them. Winnebago also contended that the tension and strife between the parties was injurious to the public.

Although Lone Star does not specify the finding to which it objects, in referring to

---

8. The Board voted three to two in favor of the motion to allow termination, with Chairman Barnes voting against the motion.

9. Appellees contend that Lone Star was required in its Motion for Rehearing to specify the particular findings or conclusions of which it complains. Because we are able to

identify the finding, we will assume Lone Star has not waived error on this issue.

10. Good cause may not be shown by the desire of a manufacturer for market penetration. Tex.Rev.Civ. Stat. Ann. art. 4413(36), § 5.02(b)(5) (West Supp.2001).

"threats of violence" and "an aging stroke victim's statement to a third party," we construe its complaint to challenge finding of fact 37. This finding relates to a telephone conversation between Bruce Byrne and a Winnebago employee in which Byrne threatened to throw Larry Gram, a Winnebago sales manager, off Lone Star's lot if he appeared at the dealership. Because Byrne was physically incapable of carrying out the threat, Lone Star contends that Winnebago misconstrued Byrne's hyperbolic outburst and challenges whether this isolated statement supports the finding of fact. Because two Board members made general references to violence in the workplace, Lone Star also objects to the Board's consideration of this evidence because it is outside the record.

Acknowledging that Byrne was not physically capable of carrying out the threat, the administrative law judge found in finding of fact 71 of the original proposal for decision that "Byrne threatened to throw Mr. Gram off the dealership lot" and that the "manufacturer is concerned for the physical safety of his employees who call on Lone Star under the threat of physical violence." This finding was carried over verbatim as finding of fact 37 in the Board's final order.

When the evidence is contradictory, we resolve any conflict in favor of the agency's decision. *Auto Convoy Co. v. Railroad Comm'n,* 507 S.W.2d 718, 722 (Tex.1974). In determining whether a finding of fact is reasonably supported by substantial evidence, we may not substitute our judgment for that of the agency on the weight of the evidence. Tex. Gov't Code Ann. § 2001.174. We must, however, test the disputed finding against evidence in the record to determine whether such relevant evidence exists as a reasonable mind might accept as adequate to support a finding of fact. *Lauderdale v. Texas*

*Dep't of Agric.,* 923 S.W.2d 834, 836 (Tex. App.—Austin 1996, no writ).

The evidence in the record supports the challenged finding. In addition to the testimony of Jack Berringer, the district sales manager for Winnebago, and Larry Gram, the Western sales manager for Winnebago, the record contains a dealer contact report describing the incident. We conclude that reasonable minds could infer or find from evidence in the record that Byrne made the statement attributed to him and that Winnebago was reasonably concerned for its employees who might call upon the dealer.

Even apart from the "threat" incident, there was substantial evidence of verbal abuse, hostility, and profanity in the record. The findings of fact contain other findings relating to this type of unprofessional conduct and hostility. Jack Berringer testified about several incidents where Winnebago employees were subjected to profane verbal abuse by Byrne. Gram, too, testified to various episodes of verbal abuse, stating that "in my 20 years in this business, I've never seen a situation develop to the point that this one has developed." Ron Post, the service district manager and special projects manager for Winnebago, testified regarding profane language directed toward him by Gordon Byrne, Lone Star's vice president. The record also contains documentation in the form of Winnebago dealer contact reports and internal memoranda which graphically describe various incidents. The Board's decision was not based on an isolated outburst or a single finding. Lone Star does not challenge the findings relating to other incidents of profane, harsh and abusive language. Moreover, the record discloses that the Board made other findings of fact that support the ultimate findings on the statutory criteria required under section 5.02(b)(5) of the Act, none of which are

challenged by Lone Star. *See* Tex.Rev.Civ. Stat. Ann. art. 4413(36), § 5.02(b)(5) (West Supp.2001).

█ The gist of Lone Star's challenge to the finding seems to be that comments made by Board members at the November hearing indicate that they were swayed by current events, rather than by evidence in the record. Because two members made brief references to "taking threats in the workplace seriously," Lone Star contends that the Board's decision to terminate was based on concerns of workplace violence not in the record, rather than the evidence before the Board.

We have previously held that it is immaterial what a board member may have said in arriving at her decision and that we look instead to whether the order is reasonably sustained by appropriate findings and conclusions that have support in the evidence. *City of Frisco v. Texas Water Rights Comm'n,* 579 S.W.2d 66, 72 (Tex.Civ. App.—Austin 1979, writ ref'd n.r.e.). To the extent these isolated references may be construed to be references to news events, they are immaterial. On the record before us, however, they can more likely be read to reflect the Board's struggle in apportioning blame and assessing responsibility for the deteriorating franchise relationship. As Board members considered the various options available to them, their deliberations exhibited caution and concern, rather than arbitrariness or capriciousness. They based their decision on statutory criteria supported by evidence in the record. We may not substitute our judgment for that of the agency as to the weight of the evidence on questions committed to agency discretion. Tex. Gov't Code Ann. § 2001.174; *see also Texas Health Facilities Comm'n v. Charter Medical–Dallas, Inc.,* 665 S.W.2d 446, 452 (Tex.1984). We therefore overrule Lone Star's fourth issue.

### C. Board's Rejection of Proposal for Decision

█ In its fifth issue, Lone Star complains of the Board's reversal of the proposal for decision prepared by the administrative law judge. Appellees contend that Lone Star has waived this complaint because it was not contained in Lone Star's motion for rehearing submitted to the Board. We agree. This complaint was not presented in any fashion to the Board in Lone Star's motion for rehearing, nor was it presented to the trial court. A motion for rehearing must be sufficiently definite to apprise the agency of the error claimed and to allow the agency the "opportunity to correct the error or to prepare to defend it." *Suburban Util. Corp. v. Public Util. Comm'n of Texas,* 652 S.W.2d 358, 365 (Tex.1983); *Wilmer–Hutchins Indep. Sch. Dist. v. Brown,* 912 S.W.2d 848, 852–53 (Tex.App.—Austin 1995, writ denied); *see also* Tex. Gov't Code Ann. § 2001.145 (West 2000); Tex. R.App. P. 33.1 (to preserve complaint for appellate review the record must show that the complaint was made to the trial court); *Gonzalez v. Texas Educ. Agency,* 882 S.W.2d 526, 527 (Tex.App.—Austin 1994, no writ). Because Lone Star failed to preserve this complaint for review, we overrule its final issue.

### CONCLUSION

Having overruled all of Lone Star's issues, we affirm the district court's final judgment which upheld the Board's order finding that Winnebago had established good cause for the termination of Lone Star's Winnebago franchise.