

# Fourth Court of Appeals
## San Antonio, Texas

### MEMORANDUM OPINION

No. 04-13-00068-CV

Mustafa **NADAF** d/b/a Discount Mini Mart,
Appellant

v.

**TEXAS COMMISSION ON ENVIROMENTAL QUALITY**,
Appellee

From the 250th Judicial District Court, Travis County, Texas
Trial Court No. D-1-GN09-002367
The Honorable Orlinda L. Naranjo, Judge Presiding

Opinion by:　Luz Elena D. Chapa, Justice

Sitting:　　　Sandee Bryan Marion, Justice
　　　　　　　Rebeca C. Martinez, Justice
　　　　　　　Luz Elena D. Chapa, Justice

Delivered and Filed:　April 23, 2014

AFFIRMED

Following a contested administrative case hearing, the Texas Commission on Environmental Quality issued an order that found that Mustafa Nadaf violated its regulations governing underground petroleum storage tanks and a previous agreed order between the TCEQ and Nadaf. The new order assessed an administrative penalty of $15,875. After the TCEQ denied Nadaf's motion for rehearing, Nadaf sought judicial review of the TCEQ's order in Travis County

district court. The district court affirmed the TCEQ's order, and Nadaf appeals from the judgment of the district court. We affirm.[1]

## BACKGROUND

Nadaf is the owner of three underground petroleum storage tanks ("USTs") at a facility known as the "Discount Mini-Mart" in Fort Worth, Texas. The TCEQ is the state agency charged with the "primary responsibility for implementing the constitution and laws of this state relating to the conservation of natural resources and the protection of the environment." TEX. WATER CODE ANN. § 5.012 (West 2008).

Pursuant to its statutory authority and duties, the TCEQ has promulgated regulations governing the operation, maintenance, and management of underground storage tanks ("USTs"). *See id.* §§ 26.347, 26.348 (West 2008); 30 TEX. ADMIN. CODE, chapter 334 (2013) (Tex. Comm'n on Env't Quality, Underground and Aboveground Storage Tanks). The TCEQ requires owners of USTs to "ensure that the systems are operated, maintained, and managed in a manner that will prevent releases of regulated substances from such systems." 30 TEX. ADMIN. CODE § 334.48(a) (2013) (Tex. Comm'n on Env't Quality, General Operating and Management Requirements). To protect the public from undetected releases, UST owners are required to conduct "effective manual or automatic inventory control procedures" and to maintain "[c]omplete and accurate inventory records" as defined by the TCEQ's regulations. *Id.* § 334.48(c).

In December 2006, Jurandir Felipe-Ortega, a TCEQ inspector, conducted an investigation of the Mini-Mart and concluded that Nadaf had violated TCEQ regulations and a previous TCEQ order by failing to conduct effective inventory control procedures on the Mini-Mart's USTs. The

---

[1] By order of the Texas Supreme Court, this case was transferred to this court's docket from the Third Court of Appeals. *See* TEX. GOV'T CODE ANN. § 73.001 (West 2013). We have decided this appeal in accordance with that court's precedent. *See* TEX. R. APP. P. 41.3.

TCEQ began an enforcement action against Nadaf, and Nadaf requested an administrative hearing. *See* TEX. WATER CODE ANN. § 7.056 (West 2008). In August 2008, an Administrative Law Judge from the State Office of Administrative Hearings conducted the contested case hearing. *See id.* § 7.058 (West 2008).

### *Contested Case Hearing*

At the hearing, the TCEQ developed its case primarily through documents produced in discovery and the testimony of Felipe-Ortega and Elvia Maske, a TCEQ enforcement coordinator. The following history between Nadaf and the TCEQ was developed at the hearing.

In October 2002, the TCEQ issued an order resolving an enforcement action against Nadaf pertaining to his USTs at the Discount Mini-Mart. Tex. Comm'n on Envtl. Quality, *Agreed Order*, Docket No. 2000-1355-PST-E (Oct. 10, 2002) [hereinafter the "2002 Agreed Order"]. In the order, the TCEQ alleged Nadaf violated the Texas Water Code and the TCEQ's regulations in four ways. Among the violations, the TCEQ alleged Nadaf "fail[ed] to have a release detection method capable of detecting a release from any portion of the UST system containing a regulated substance, including the tanks, piping, and other ancillary equipment, and by failing to conduct effective inventory control procedures." The order reflects that Nadaf denied the TCEQ's allegations, but nonetheless agreed to pay an administrative penalty. The order also required Nadaf to "immediately . . . begin conducting effective manual or automatic inventory control procedures for all USTs in accordance with 30 TEX. ADMIN. CODE § 334.48(c)" and to submit documentation within forty-five days of the order that demonstrated his compliance with the order.

In July 2006, Rebecca Minnick, a TCEQ investigator, conducted a review of the TCEQ's file on Nadaf to assess his compliance with the terms of the 2002 Agreed Order. Her review noted that Nadaf was in violation of the 2002 Agreed Order because he, *inter alia*, had not submitted

documentation demonstrating that Nadaf was conducting effective manual or automatic inventory control procedures for the Mini-Mart's USTs.

As a result of Minnick's review, the TCEQ sent a notice of violation letter to Nadaf on July 28, 2006. The NOV letter identified Nadaf's outstanding violations of the 2002 Agreed Order and set deadlines for Nadaf's compliance. This letter was admitted into evidence at the contested hearing. The TECQ also introduced into evidence a notice of violation letter from the City of Fort Worth to Nadaf. That NOV letter notified Nadaf that the City had found the Discount Mini-Mart to be in violation of TCEQ regulations governing air pollution.

In December 2006, Felipe-Ortega conducted his inspection of Nadaf's Mini-Mart as a follow-up to Minnick's compliance review. Felipe-Ortega testified that Nadaf uses an automatic tank gauging and an inventory control system to monitor gasoline levels in the Mini-Mart's USTs. *See* 30 TEX. ADMIN. CODE § 334.50(d)(4) (2013). Thus, Nadaf was required to conform his inventory control practices with subsection 334.50(d)(1)(B). *Id.* § 334.50 (d)(4)(A)(i). Under that subsection, he was required to measure and record on every operating day the amount of gasoline put into the tanks, the amount of gasoline withdrawn from the tanks, and the amount of gasoline left in the tanks. *Id.* § 334.50(d)(1)(B)(iii)(I). At the end of every month, Nadaf was also required to measure the water levels at the bottom of his tanks and to make an appropriate adjustment in his inventory control records on the basis of that measurement. *Id.* § 334.50(d)(1)(B)(iii)(IV). In addition, Nadaf was required to conduct a "[r]econciliation of detailed inventory control records . . . at least once each month." *Id.* § 334.50(d)(1)(B)(ii).

Felipe-Ortega testified that keeping daily inventory records, monitoring water levels, and conducting monthly reconciliation are required by the TCEQ because those steps allow the UST owner to discover potential leaks of gasoline from the tanks or water seeping into the tanks. Felipe-Ortega explained that monthly reconciliation of daily inventory records was similar to the owner

of a checking account balancing her checkbook. Nadaf was unable to provide Felipe-Ortega with his inventory control records for the Mini-Mart's USTs, but by the time of the hearing, the TCEQ had received his records from the years 2002 to 2009.

To perform inventory control, Nadaf uses a form promulgated by the TCEQ to record the required measurements and complete monthly reconciliation for each of his three USTs. Felipe-Ortega testified the inventory control records produced by Nadaf were not complete and accurate. Felipe-Ortega testified that by not fully and properly completing the inventory control records Nadaf had no way to detect a leak from one of his USTs and therefore he had not performed effective inventory control. Nadaf's main defense at the hearing was that any violations were only "paper violations."

In her proposal for decision, the ALJ found "it likely that [Nadaf] did not fill out the records on a daily basis, and the records provided to the Commission were fabricated." In its final order, the TCEQ found Nadaf's "inventory control records for the years 2003 through 2008 lack entries allowing the facility to determine whether a leak has occurred"; "[m]any of the inventory control records contain a daily over/short calculation of zero, which is unlikely given the contraction and expansion of gasoline"; "[s]ome of the inventory control records contain the exact same figures for the same tanks in different years, with similar corrections to certain entries"; and "[a]ll of the inventory control records omit required information."

*Penalty Calculation*

At the hearing, Elvira Maske testified the TECQ had calculated its proposed penalty by following its published guidelines, and the TCEQ's Penalty Calculation Worksheet was admitted into evidence. Maske testified that the agency exercised its discretion and sought to penalize Nadaf for only one violation per year from 2003 to 2007. Under the TCEQ's guidelines, the base

administrative penalty for a violation is the statutorily authorized maximum—which in Nadaf's case was $10,000 per violation.

The TCEQ then made a series of adjustments based on its classification of the violator and the nature of the violation. The TCEQ classified Nadaf as a "minor" violator because his USTs dispense less than 50,000 gallons per month. The TCEQ classified Nadaf's violation as a "potential" violation because no release of gasoline had occurred and as a "major" violation because of the potential harm to the public from an undetected release. Based on these classifications, the base administrative penalty was multiplied by 25%, equaling $2,500 per violation. The TCEQ then multiplied $2,500 by five—the number of violation events—resulting in a penalty of $12,500.

The TCEQ then made another set of adjustments based on Nadaf's compliance history to enhance the penalty. The 2002 Agreed Order in which Nadaf denied liability enhanced the penalty by 20%, the notice of violation sent by Minnick for Nadaf's violation of the order enhanced the penalty by 5%, and the notice of violation sent by the City of Fort Worth enhanced the penalty by 2%. The 27% enhancement resulted in a total proposed administrative penalty of $15,875.

The ALJ's proposal for decision accepted the recommend penalty, and the TCEQ adopted it in its final order.

### *Appeal from TCEQ's Order*

After the TCEQ issued its final order, Nadaf timely filed a motion for rehearing, which the TCEQ denied. *See* TEX. GOV'T CODE ANN. § 2001.145 (West 2008) ("A timely motion for rehearing is a prerequisite to an appeal in a contested case . . . ."). Nadaf then timely exercised his right to judicial review of the TCEQ's order. *See* TEX. WATER CODE ANN. §§ 5.351, 7.064 (West 2008); TEX. GOV'T CODE ANN. § 2001.171 (West 2008). The district court affirmed the TCEQ's order.

**DISCUSSION**

Nadaf's brief contains three points of error, in which he challenges the ALJ's evidentiary rulings at the contested hearing, the administrative penalty, and the TCEQ's findings of fact and conclusions of law.

*Standard of Review*

The Texas Water Code does not define the scope of judicial review of a decision of the TCEQ, and thus we review under the "substantial evidence" standard. TEX. GOV'T CODE ANN. § 2001.174 (West 2008); *see Slay v. Tex. Comm'n on Envtl. Quality*, 351 S.W.3d 532, 548–49 (Tex. App.—Austin 2011, pet denied). We may not substitute our judgment for the judgment of the TCEQ on the weight of the evidence on questions committed to the TCEQ's discretion, and we will affirm if some reasonable basis exists in the record for the TCEQ's action. *Slay*, 351 S.W.3d at 549. We will reverse the TCEQ's decision and remand for further proceedings only if Nadaf's substantial rights were prejudiced because the TCEQ's findings, inferences, conclusions, or decision are:

> (A) in violation of a constitutional or statutory provision;
>
> (B) in excess of the agency's statutory authority;
>
> (C) made through unlawful procedure;
>
> (D) affected by other error of law:
>
> (E) not reasonably supported by substantial evidence considering the reliable and probative evidence in the record as a whole; or
>
> (F) arbitrary or capricious or characterized by abuse of discretion or clearly unwarranted exercise of discretion.

TEX. GOV'T CODE ANN. § 2001.174(2); *Slay*, 351 S.W.3d at 548–49.

### *The ALJ's Evidentiary Rulings*

In his first point of error, Nadaf complains that the ALJ improperly admitted evidence at the contested hearing and that the TCEQ's penalty calculation relied on the improperly admitted evidence, thus violating Nadaf's due process rights. Nadaf specifically complains about the admission of the two notices of violation and the 2002 Agreed Order. The TCEQ argues that Nadaf waived any complaint about evidentiary issues because his motion for rehearing at the administrative level was not sufficiently specific to identify the alleged evidentiary errors.

"The purpose of a motion for rehearing is to put the agency on notice as to the errors the party seeking judicial review alleges," and it "must be 'sufficiently definite' to apprise the agency of the errors claimed and allow the agency the opportunity to either correct the error or prepare to defend it." *Morgan v. Employees' Ret. Sys. of Tex.*, 872 S.W.2d 819, 821 (Tex. App.—Austin 1994, no writ) (citing *Suburban Util. Corp. v. Pub. Util. Comm'n*, 652 S.W.2d 358, 365 (Tex.1983)). The fair notice standard of section 2001.45 "requires the complaining party to set forth succinctly (1) the particular finding of fact, conclusion of law, ruling, or other action by the agency that the complaining party asserts was error; and (2) the legal basis upon which the claim of error rests." *Id.* at 821 (citing *Burke v. Cent. Educ. Agency*, 725 S.W.2d 393, 397 (Tex. App.—Austin, writ ref'd n.r.e.) (op. on remand)). "These two elements may not be supplied solely in the form of generalities." *Id.* at 821 (citing *Burke*, 725 S.W.2d at 397).

The only complaint in Nadaf's motion for rehearing regarding inadmissible evidence states that "[a] portion of the testimony regarding this case was hearsay and of no probative value." The motion does not identify what "testimony" or other evidence was hearsay. We hold that Nadaf's motion "impos[ed] upon the [TCEQ] a burden of finding its own errors in order that they might be corrected" and failed to meet the fair notice standard of a motion for rehearing. *See Burke*, 725 S.W.2d at 399. In addition, Nadaf did not complain about the ALJ's evidentiary rulings in the

district court. *See* TEX. R. APP. P. 33.1 (requiring as a prerequisite for appellate review that the record show a timely complaint was made to the trial court). Thus, Nadaf's complaints concerning the ALJ's purportedly erroneous admission of evidence were not preserved for our review. *See Lone Star R.V. Sales, Inc. v. Motor Vehicle Bd. of the Tex. Dep't of Transp.*, 49 S.W.3d 492, 502 (Tex. App.—Austin 2001, no pet.) (holding appellant's complaint that the agency's order reversed the ALJ's proposal for decision was not preserved for judicial review or appellate review because it was not presented to the agency in a motion for rehearing or to the district court on judicial review).

### *The TCEQ's Penalty Calculation*

In his second point of error, Nadaf advances several arguments to contend that the TCEQ's administrative penalty was not supported by substantial evidence and violated due process.

Most of Nadaf's arguments under this point of error may be classified as "notice" arguments, contending that the TCEQ did not provide Nadaf with sufficient notice of the regulations that he was accused of violating or that the 2002 Agreed Order could be used to enhance the penalty in a later enforcement action. Nadaf's motion for rehearing does not complain that he received insufficient notice at any point of the administrative proceeding. Therefore, his notice arguments were not preserved for judicial review. *See Lone Star R.V. Sales*, 49 S.W.3d at 502; *see also Wilmer-Hutchins Indep. Sch. Dist. v. Brown*, 912 S.W.2d 848, 853 (Tex. App.—Austin 1995, writ denied) ("In its motion for rehearing before the Commissioner, the Board complained neither about the Commissioner's failure to consider certain legally relevant factors, nor that reinstatement was an improper remedy. Because the Board failed to preserve these complaints for review, we overrule points of error seven and eight.").

Nadaf's other main argument is that, in light of the facts of his case, the administrative penalty was an excessive fine in violation of the Texas Constitution, the Texas Water Code, and

substantive due process. In his motion for rehearing, Nadaf objected to the TCEQ's penalty because it was "excessive and not justified by the facts of the case," and he pursued the same complaint at the district court level. Although Nadaf's motion for rehearing did not expressly contend the administrative penalty was an excessive fine in violation of the United States Constitution, Texas Constitution, or the Texas Water Code, we will nevertheless address all of Nadaf's arguments.

The Texas Constitution prohibits excessive fines. *See* TEX. CONST. art. I, § 13 ("Excessive bail shall not be required, nor excessive fines imposed, nor cruel or unusual punishment inflicted."). Generally, "prescribing fines is a matter within the discretion of the legislature." *Pennington v. Singelton*, 606 S.W.2d 682, 690 (Tex. 1980). "A fine is not unconstitutionally excessive and the courts will not override the legislature's discretion, 'except in extraordinary cases, where it becomes so manifestly violative of the constitutional inhibition as to shock the sense of mankind.'" *Id.* (quoting *State v. Laredo Ice Co.*, 73 S.W. 951, 953 (Tex. 1903)). "Similarly, as to due process, the states possess a wide latitude of discretion in the matter of imposing fines, and 'their enactments transcend the limitation only where the penalty prescribed is so severe and oppressive as to be wholly disproportioned to the offense and obviously unreasonable.'" *Id.* (quoting *St. Louis, I.M. & S. Ry. Co. v. Williams*, 251 U.S. 63, 66-67 (1919)). A primary consideration in determining whether a fine is excessive is whether it is fixed with reference to the object it is to accomplish. *Id.* For instance, "[l]arge penalties for anticompetitive business practices and usurious interest rates have been upheld by Texas courts when considered in light of the abuse the penalties were designed to cure." *Id.*

The Texas Water Code provides that "each day a continuing violation occurs may be considered a separate violation." TEX. WATER CODE ANN. § 7.052(d) (West Supp. 2013). At all times relevant to the TCEQ's administrative action against Nadaf, it was authorized to impose a

maximum penalty of $10,000 per violation. *See* Act of May 23, 2001, 77th Leg., R.S., ch. 1271, § 2, 2001 Tex. Gen. Laws 3048, 3048 (amended 2011) (current version at TEX. WATER CODE ANN. § 7.052(c) (West Supp. 2013)). However, the TCEQ exercised its discretion and only penalized Nadaf for five violations over a five-year period for a total fine of $15,875. Given that the environmental costs of a clean-up from an undetected release would likely greatly exceed $15,875, we conclude that the TCEQ's fine is not unconstitutionally excessive when considered in light of the harm the TCEQ's regulations attempt to prevent. *See Pennington*, 606 S.W.2d at 690.

Nadaf also argues that the penalty is excessive because it was impermissibly enhanced because of his violation of the 2002 Agreed Order. He contends section 7.068 of the Water Code prohibits such an enhancement. That section states: "[p]ayment of an administrative penalty under this subchapter is full and complete satisfaction of the violation for which the penalty is assessed and precludes any other civil or criminal penalty for the same violation." TEX. WATER CODE ANN. § 7.068 (West 2008). The TCEQ's penalty calculation does not violate the prohibition for three reasons. First, it is an administrative penalty, not a civil or criminal one. *Compare* TEX. WATER CODE ANN., title 2, chapter 7, subchapter C (West 2008 & Supp. 2013) ("Administrative Penalties"), *with id.*, title 2, chapter 7, subchapter D ("Civil Penalties"), *with id.*, title 2, chapter 7, subchapter E ("Criminal Offenses and Penalties"). Second, Nadaf's violation of the terms of the 2002 Agreed Order is separate from the violations which that order sanctioned. Third, the TCEQ is explicitly authorized to consider the history and extent of previous violations when determining the amount of an administrative penalty. *Id.* § 7.053(3)(A) (West 2008).

Finally, as a general response to Nadaf's contention that the fine was not justified on the facts of his case because his violation was "procedural" and did not actually result in an undetected release, we note the actual impact of Nadaf's violation was only one factor to be considered by the TCEQ. *See id.* § 7.053(2). The TCEQ was also authorized to consider:

- the nature, circumstances, extent, duration, and gravity of Nadaf's actions, with a special emphasis on the hazard or potential hazard created to the health or safety of the public;

- the history and extent of Nadaf's previous violations;

- economic benefits gained by Nadaf through his violations;[2] and

- the penalty necessary to deter future violations by Nadaf.

*Id.* § 7.053(1), (3)(A), (3)(D), (3)(E). Based on this statutory authorization and the evidence we have recounted from the contested hearing, we hold that the administrative penalty is justified by the facts of this case and supported by substantial evidence.

### *The TCEQ's Findings of Fact and Conclusions of Law*

In his third point of error, Nadaf complains that one of the TCEQ's findings of fact and one of its conclusions of law erroneously identify the 2002 Agreed Order as part of Docket Number 2002-1355-PST-E, instead of the correct 2000-1355-PST-E. He argues the finding of fact and the conclusion of law are therefore not supported by evidence.

Nadaf's complaints raised in his motion for rehearing about the TCEQ's findings of fact and conclusions of law was that they were not based on any evidence that his tanks actually sustained leakage and that his violation was simply a procedural bookkeeping problem. Therefore, Nadaf's complaint on appeal about the mismatched docket number of the 2002 Agreed Order was not preserved for judicial review. *See Morgan*, 872 S.W.2d at 821; *Burke*, 725 S.W.2d at 397. In addition, this complaint was not presented to the district court, and thus not preserved for appellate review. *See Lone Star R.V. Sales*, 49 S.W.3d at 502. Even if his complaint were preserved for our

---

[2] Although the TCEQ determined that Nadaf received an economic benefit of $5,276 by not complying with its regulations, it did not enhance his administrative penalty on that basis because it does not make adjustments for economic benefits if their value is less than $15,000.

review, Nadaf has not demonstrated that these typographical errors prejudiced his substantial rights. *See* TEX. GOV'T CODE ANN. § 2001.174(2).

## CONCLUSION

We affirm the district court's judgment.

Luz Elena D. Chapa, Justice